Call the next case, please. Mr. McCarthy. Good morning. Your Honors, may it please the court. My name is John McCarthy and I represent Daenerys Barnett. This case involves an interaction between five elements of a jury trial or a criminal prosecution. First, you have the statute. Second, you have the charging instrument. Third, you have the evidence. Fourth, you have the jury instruction. And fifth, you have the verdict. The statute in this case involves armed robbery. The armed robbery statute creates four distinct ways in which an individual can commit an armed robbery. There are two that are relevant to our discussion today. The first one is the person is armed with a dangerous weapon other than a firearm. And the second is he's armed with a firearm. These are distinct offenses with varying substantive elements that have distinctive sentences. The charging instrument in this case is somewhat of a hybrid. It charges Daenerys Barnett to commit armed robbery with a dangerous weapon, a handgun. And this is not the first time Kerry Atone uses that hybrid charge. I've sat on three or four cases where they've repeatedly charged a dangerous weapon, comma, a handgun. And then either cite to A1 or A2. But it is a hybrid offense, I agree. In this case, there was a judgment notwithstanding the verdict, a motion for a judgment notwithstanding the verdict filed in the trial court, which the judge denied. And I'm wondering why you didn't raise an issue related to that on appeal. I'll tell you why I'm concerned. Okay, sure. And I think you and I may be headed in the same direction based on your preliminary remarks. They charge a violation of A1 for a dangerous weapon, comma, handgun. Right. But your client defended, or they charge A2, excuse me. Right. A dangerous weapon, handgun. Your client defended the firearm issue. The state did not request an amendment to an A1. You defended on A2. The jury acquitted on A2. Nobody requested that the charging instrument be modified. The state didn't ask that there be some sort of correction. So he was charged with an A2 violation, but the court sentenced him on A1. Because of that, I don't understand why this is not an acquittal that ends the discussion right there. Can you help me with that? I considered that as an option. And part of the problem goes to one of the next steps in my analysis is the jury instructions themselves.  They first instructed the jury that you could find Mr. Barnett guilty of armed robbery if he has a dangerous weapon. And they voted that he was guilty of that. Then they were asked in a special interrogatory, for lack of a better term, did the state prove beyond a reasonable doubt that Mr. Barnett was armed with a firearm? And they said that was not proven. And given the set of instructions that defense counsel didn't object to, the jury did make a finding on A1. And so I thought, I did consider that it should be an acquittal. In my heart of hearts, it probably should be an acquittal. But I know this court has the inherent authority to, when there is a guilty finding, even though it's A1 in this case, that it can reduce that. Why are you saying it's an A1? Because are you saying then that an A1 charge is a lesser included offense to A2? Because I don't see it that way. It's not lesser included. I don't agree. I don't believe it is. It's just the way the jury was instructed. I think the jury was instructed incorrectly. Well, the fact that the jury was erroneously instructed led to an inconsistent, apparently inconsistent verdict when compared to the special finding. Correct. But because the jury was incorrectly instructed by the trial court doesn't take away from the fact that the jury did not find him guilty of an element of an A2 violation. I agree. So the fact that counsel didn't object to the instructions may be ineffective assistance? I don't know. But how can we reduce that then to a simple robbery if there's an acquittal? If there's an acquittal on A2, I think I'd close the book and go home. But you're asking us to reduce it to a simple robbery. And I don't quite understand where that's coming from. Well, perhaps Mr. Burnett has received ineffective assistance of appellate counsel in that case. And I'm not insinuating that. No, I mean, you have a very valid point. And it's a point I considered and I did not pursue and perhaps I should have. Because they were incorrectly instructed. Part of the problem is the IPI is behind the curve on this. Yes, it is. Absolutely it is. And they instructed him in accordance with the IPI. Yes, it is. But that's wrong. Yes, it is. I don't know if you've read my special concurring decision in People v. Holley. I brought it up again in People v. Tula-Taylor. But I have repeatedly written trying to hint to the Peoria County State's Attorney's Office that this high grant charge at some point in time is going to result in us having to make a difficult decision in this court and set aside a conviction. I've repeatedly written it in the nicest of ways. Yes. But they continue to use this high grant charge. And I think in this case, it creates a great difficulty for you and for this court. So... I believe acquittal would be a viable option here. And in hindsight, you've gone 20, you know, court of appeals. Let me ask you this. Did the state agree? Because during the conference on jury instructions, defense counsel at trial did say, I want to talk to my client about a lesser included instruction being robbery. Right. And the state at that point said, oh, no, lesser included would be aggravated robbery, an A-5 violation. And it's my understanding that the state opposed any lesser included instruction. They did. But the judge at that point said that if I'm going to give a lesser included, it would be aggravated robbery, which we discussed in a brief would have been wrong, would have compounded the errors. But the defense said, you know what? I've talked to my client. We don't want a lesser included. Correct. So actually when the judge sentenced for the A-1 violation, didn't he in fact kind of by default allow them a lesser included or a lesser not necessarily included binding? Nobody asked to reduce the charge. Nobody asked to amend the charge. And the jury did not find an element of the effects. And that's where I, that's the roadblock that I'm at and why you're here to answer her question. Okay. Having listened to the analysis of the court, I agree that the proper remedy is an acquittal. Because in essence, even though these are two different ways of committing an armed robbery, these sentences, they're different. They have different elements. And the hybrid charge in this case, the state failed to prove, they charged under A-2, and they failed to prove an element of that offense, which is it was a firearm. I know the state has argued in this brief that the evidence said it was a firearm. It's overwhelming. But we all, I'm sure, agree that that's inappropriate because of double jeopardy. You know, the jury's findings are fact. They're final. When it comes to acquitting a defendant of an offense. You probably feel like you've just been smattered with a barrage of questions, and I apologize. No, absolutely not. I would just assume learning what's on the court's mind and trying to guess. And you certainly have opened my eyes to perhaps not being quite so quick to reject an argument I considered for possibly invalid reasons. I thought because the jury had, in fact, found the A-1 charge, I was stuck with it. But he was in charge of A-1. The state rejected the last of the offenses. Defense counsel or defendants rejected the last of the offenses. And I've been persuaded that the correct- It's the all-or-nothing approach that the state, the tactic that the state took at trial, that all-or-nothing approach did not mesh well with the hybrid charge that they repeatedly use in Peoria County through the state's attorney's office. And we've done some extensive research, and no other county continues to charge an aggravated or an armed robbery in this way. And I'm not sure what it's going to take to have Peoria County actually look at the statute that was amended more than ten years ago. Right. To make these separate offenses. There is no longer an offense of carrying a dangerous weapon, comma, that is a handgun. The dangerous weapon is either something other than a firearm or a firearm, period. Correct. There is no charge for being in control of a dangerous weapon, comma, being a firearm. I'm not familiar with the practices of Peoria County because I'm from the 4th District. I do know that the cases I have in the 4th District like this, they simply charge a firearm. They don't use the hybrid offense. That's why I was kind of surprised by the way it was charged. Well, it's fairly routine. We see it, at least I've seen it in no less than three, possibly four cases. Okay. Thank you for your time. Are there any other questions? Thank you, Your Honor. Thank you, Mr. McCarthy. Mr. Nicolosi? Good morning.  May it please the Court? May it please the Counsel? Well, Your Honors, of course, the people did not call this case into oral argument today, so I'm going to be very brief in my opening remarks. From what I had prepared, Your Honors, went a little different direction than I had thought. I didn't realize the jury instruction, the hybrid jury instruction was going to be the issue here. It's not. It's the charging instrument. It's the charging. I understand. And then he was charged under A-2. The people would submit that there was sufficient evidence to prove the defendant guilty under A-2. What was he sentenced for? Like you said, Your Honor, he was sentenced for A-1. But he was charged under A-2 and found guilty presumably under A-2. Would you agree there was no motion to amend the charge to correct some sort of Scrivner's error? No. The State didn't argue in the trial court what we really meant to charge in A-1. Yes, Your Honor. Yeah, it was not mentioned. I noticed in your brief on page 2 that you were maybe a little creative by saying that an individual commits armed robbery when he takes property from another person by the use of force or by threatening the use of force, and then you cite only to 18-2A without regard to subsection 1 or 2. Let me ask you the question. And if you need a copy of the statute, I can give you one. I might. Have you got one? I don't have one on hand, no. Let me give you a copy. Come around. As long as my bailiff doesn't attack you for it. If you look under A, now back in the old days when I was in law school, it used to be dangerous weapon, which could include a firearm. But about 10 years ago, there was a public act that amended that. Now you'll see under A-1 and A-2. There actually appears to be different elements. And so A-1 is possessing a dangerous weapon other than a firearm, and A-2 is a firearm alone. I may be catching you on the spot, but do you have a sense of whether those are lesser? They're certainly lesser because they carry different punishments, but I'd like your thoughts on whether an A-1 is a lesser included other than A-2. And if I put you on the spot and you don't feel like you want to address it without running it by the State's Attorney's Office, I understand. I think, Your Honor, maybe I'm a little confused as to the effect of my answer on this case. All right. Well, if it's not a lesser included, then it's a separate offense. And there was only one charge here. So I see. So what the court might do is amend to a conviction under A-1 because that was proven? If the state had requested it in the trial court, perhaps that would have been appropriate. They could have said, you know what, we made a mistake. We charged a dangerous weapon, comma, a handgun. We never meant to imply that that handgun, which is a BB gun, was a firearm. I mean, they could have made that argument, could have asked to amend the charge to an A-1. But here, the state adopted an all or nothing approach. And they said, we're charging an A-2. By golly, we don't want a lesser included instruction. And we're going to take it to the jury. And the jury comes back and says, not a firearm. At that point, I think everybody has to go home. And I don't understand why he was sentenced on an A-1 without a motion to amend. And the defense preserved the issue with a motion for judgment not abstaining the verdict, asking for an acquittal. But it didn't happen. I guess, Your Honor, my comment is, so are we under the assumption that the reason for the special interrogatory was to help us to try and prove an element of the original charge? The reason for the special interrogatory is the Peoria County State's Attorney's Office requested it. Yes. And the reason they requested it is because the IPI instructions haven't really caught up with the amendment that was enacted ten years ago. But instead of addressing the difference in the IPI instruction, by tendering a modified instruction to properly set out the elements, the issues instruction that the jury has to consider, the State's Attorney's Office in Peoria County simply gives a special instruction. In that way, they inject the issue of a dangerous weapon into the trial, although he's never been charged with possessing the dangerous weapon other than a firearm. So it's a subtle way to hedge your bets. I definitely see where you're coming from. And I guess I didn't beforehand, before this moment right now, I hadn't thought about it clearly. And we can all listen to the recording of me trying to fight my way through it. My office was operating under the assumption that the reason they did the special interrogatory of the firearm was solely to establish the firearm sentence enhancement. This would be 15 years, I believe. And I may be wrong, but if you look at the statute, it's not a sentencing enhancement. The firearm is an element of the new offense. Of this offense. Okay. I definitely see. And it certainly doesn't hurt to have that issues instruction, that special instruction. Sure. Never give the jury too much good instruction. Sure. But the problem in this case is the issues instruction was wrong. It appears that way. A dangerous weapon should not have been injected into their consideration. So what has been alleged to be an inconsistent verdict is actually a verdict entirely consistent with incorrect instruction. Okay. You know, I'm not the greatest thinker on my feet. Would the defendant waive this argument that the instruction was improper by not arguing it here on appeal? Perhaps. Perhaps. You know, that's a good point. And that's why you're here today. Well, it seems as though that might be my strongest argument. Let me pick your brain since you're doing so well on your feet. As an officer of the court, once the jury comes back and finds somebody not guilty of an element of the offense, as an officer of the court, what do you think the obligation of the state's attorney's office should be? I believe, Your Honor, if the state's attorney was aware that they had given the jury incorrect instructions to begin with, if they were aware that that would have been an element of the offense, I believe that there might have been some wrongdoing, for lack of a better word. Okay. However, I would like to believe that this is maybe an oversight. It sounds like, Your Honor, you're more familiar with the- in this instance. But I would hope to believe that this was just an oversight that I guess I will have to talk to Peoria about. Okay. Well, I appreciate that. I definitely will. As you know, I've done my best in the past as well. And I'm not here to say that I'm always right. So perhaps, and that's why you're here. I certainly can be wrong. But I would point out that we have the same or similar issue pending in this court in People v. Kelly, which is 03-09-0656. And previously, I wrote a fairly extensive separate decision in People v. Holly that was cited at published 377LF3809. That was decided in 2007, and I was really hoping that somebody in the Peoria County State's Attorney's Office might read that. But apparently, they didn't. And then I wrote a decision in People v. Tula Taylor, which I think was in 2010. I could be wrong. Again, it was a separate decision. And I said, look, look at the public act because this is going to bite, this hybrid charge is going to bite somebody. And what's going to happen is somebody who maybe should be convicted of a very serious offense is going to go home because of the hybrid offense. And the all or nothing approach taken by the State's Attorney's Office, not to either charge both an A-1 in count one and an A-2 in account two. And perhaps a simple robbery in account three. So if after you've been battered by my questions today and you get back to the office and you think about this and want to submit something in writing, I certainly would look at any case law or any thoughts that you have. I appreciate that. And then on the other hand, if you get back to the office and you speak to your client, the Peoria County State's Attorney's Office, and they say, you know what, this guy was acquitted, we're always happy to welcome a concession of error, too. Okay. Okay. Thank you. Are there any other questions? I will say this. We're all officers of the court. The State's Attorney's Office has a duty to carry out justice, too. Well, definitely. And when, having been a former prosecutor on occasion, I made mistakes, too. And when you're hit in the face with a mistake such as this that actually results in acquittal, that's something that your office needs to seriously look at. Absolutely. And I kind of had tunnel vision with regards to this case, and I focused on the issues that I felt were appropriate and discussed it with my- That's the benefit of having three of us sitting up here and kicking things around. Sure, sure, definitely. And having two sides to consider first. We read briefs from both sides, and then our decision evolves. You are supposed to have tunnel vision. I'm prepared. Yeah. Well, I appreciate this discussion, and I'll definitely look into it when I go back to the office. Anything further? Thank you, Mr. Nicklausen. Thank you. Mr. McCarthy, any rebuttal? Your Honors, I just have two points on rebuttal. The state has brought up the issue of labor, which is true. However, that's a limitation on me, not on the court. And the second point would be if any error would ever be plain error, it would be somebody being wrongfully convicted of a crime they were never charged with. So I think that will overcome the labor problem. I did anticipate very little, but I did anticipate one thing. I thought that the state may attempt to argue that being armed with a firearm is not an element of the offense. It's just simply a sentence enhancement. And so I was in the office this weekend. I was doing some research, and I couldn't find—apparently not good research—didn't find cases on point with the armed robbery statute. But I did find an Illinois Supreme Court case that dealt with the firearm provisions in the home invasion statute, which is Kupferer 216 L. 2nd 533. And what they held was when the legislature amended the home invasion statute with the 1520-25 Delight provisions, its intent was to create distinct types of home invasion. These distinct offenses carry distinct sentences. The type of home invasion we were to defend was charged with the firearm. I'm familiar with that case, and I don't think counsel is making that argument. Okay. I don't. I appreciate that you did the research. I'm hoping you didn't do it on Mother's Day. Excuse me? Oh, no. I was involved on Mother's Day, so. If there are no more questions. I extend the same offer to you if you get back to your office after being hit with questions that you couldn't possibly have anticipated. Find something, a case that you want to give to us. I hope the panel doesn't object, but we'll leave it open for a week. If you find any cases that you want to submit to us with a motion for supplemental authority, we would welcome those. Yes, ma'am. All right. Thank you. That's fine. Thank you, Mr. McCarthy. We thank you both for your arguments this morning, and those of Justice Wright. We'll take this matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel hearing.